**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

EQUAL EMPLOYMENT OPPORTUNITY:
COMMISSION,
                            :

      Applicant/Plaintiff,
                            :

vs.                                  Misc. No. 17-00006-WS-MU

                            :

AUSTAL USA, LLC,
                            :

      Respondent.

## <u>REPORT AND RECOMMENDATION</u>

This miscellaneous action is before the undersigned for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S), on the Equal Employment Opportunity Commission's application for an order to show cause why a certain administrative subpoena, Subpoena No. MOBI-16-002, should not be enforced (*see* Doc. 1), Austal USA, LLC's motion to quash subpoena and answer and response to the EEOC's application (Doc. 6), and the arguments of counsel at the July 25, 2017 show cause hearing (*see* Doc. 8).[1] Upon consideration of

---

[1] Although an argument can be made that a motion to enforce and a motion to quash a subpoena are non-dispositive matters, *see EEOC v. Trinity Health Corp.,* 107 F.Supp.3d 934, 936 (N.D. Ind. 2015) ("A motion to enforce a subpoena is generally viewed as a non-dispositive matter[.]"), because the undersigned's determination, if adopted by the Court, will be dispositive of the entire matter before the Court (whether to enforce the subpoena or quash it), the undersigned views the motions as dispositive motions that must be addressed by Report and Recommendation. *Compare id. with, e.g., United States v. DTV Install, LLC,* 2017 WL 631552 (M.D. Fla. Jan. 31, 2017) (report and recommendation entered by Magistrate Judge), *report and recommendation adopted sub nom. Perez v. DTV Install, LLC,* 2017 WL 626120 (M.D. Fla. Feb. 15, 2017); *Solis v. Sea World of Florida, LLC,* 2013 WL 1365764 (M.D. Fla. Mar. 14, 2013) (report and recommendation entered by Magistrate Judge), *report and recommendation adopted,* 2013 WL 1365763 (M.D. Fla. Apr. 4, 2013), and *Equal Employment Opportunity Comm'n v. Royal Caribbean Cruises, Ltd.,* 2013 WL 9778951 (S.D. Fla. Jan. 4, (Continued)

all relevant pleadings and attachments in this case, as well as the arguments of counsel at the July 25, 2017 show cause hearing, the undersigned recommends that the Court **DENY** the EEOC's motion to enforce administrative subpoena (*see* Doc. 1) and **GRANT** Austal's motion to quash subpoena (Doc. 6).

## PROCEDURAL BACKGROUND

This case has a lengthy procedural history. On March 5, 2015, Jimmy A. Cooper filed a Charge of Discrimination with the EEOC, setting forth that Austal USA terminated him on January 27, 2015 for violating its attendance policy and alleging that he was terminated because of his disability in violation of Title I of the Americans with Disabilities Act ("ADA"). (Doc. 1, Attachment 1 to Declaration of Delner Franklin-Thomas.) "While on approved short term disability leave, I accrued seven and a half occurrences which put me over the maximum allowed. The Respondent failed to provide leave as an accommodation." (*Id.*) That same day, the Mobile Office of the EEOC sent Austal notice of Cooper's charge of discrimination and requested a statement by April 7, 2015 regarding its "position on the issues covered by th[e] charge, with copies of any supporting documentation[.]" (Doc. 1, Attachment 2 to Franklin-

───────────────────

2013) (report and recommendation entered by Magistrate Judge), *report and recommendation adopted,* 2013 WL 12133963 (S.D. Fla. Jun. 7, 2017), *aff'd,* 771 F.3d 757 (11th Cir. 2014; *see also In re Subpoena issued to Birch Communications, Inc.,* 2015 WL 2091735, *2 (N.D. Ga. May 5, 2015) ("Although typically 'a motion to enforce [or quash] a subpoena in a civil action would be a routine matter which a magistrate judge could dispose of as a nondispositive motion,' here, the Subpoena is 'not part of a larger case before the court,' and a decision on the Motion to Quash will end the proceeding in this Court. . . . '[T]he question of whether or not to enforce the [S]ubpoena is the only matter before the [C]ourt' and '[o]nce the [C]ourt grants or quashes the [S]ubpoena, it determines with finality the duties of the parties.' *See Frazier,* 966 F.2d at 817-818. The Court concludes that CBeyond's Motion to Quash is a dispositive motion." (most citations omitted)).

Thomas declar.; *see also id.* ("Your response will be placed in the file and considered as

we investigate the charge.")).

Austal provided its position statement on April 14, 2015 and stated in relevant

part as follows:

> [A] full and fair reading [of Cooper's Charge] suggests he contends Austal
> assessed attendance-related unexcused absences—or, "occurrences"—
> against him when he should have been afforded a leave of absence as a
> reasonable accommodation; and further, because of these occurrences,
> he exceeded the maximum allowed occurrences under Austal's
> Attendance Policy and thus, was terminated on January 27, 2015.
>
> .        .        .
>
> Second, wholly contrary to his assertions otherwise, the Charging Party
> was provided a leave of absence as a reasonable accommodation, during
> which time *all* of his absences were excused and no occurrences were
> assessed against him.
>
> .        .        .
>
> [T]he matters at issue in the Charge surround leave-related events, or
> *alleged* leave-related events, which occurred in 2014. Specifically, on May
> 20, 2014, the Charging Party requested a medical leave of absence. The
> Charging Party already had exhausted his annual FMLA entitlement
> (counted on a rolling 12-month basis) and was ineligible for additional
> FMLA leave until his annual FMLA entitlement renewed on June 11, 2014.
> To "bridge" any interim absences pending the renewal of his FMLA "clock"
> on June 11, Austal provided the Charging Party with a leave of absence
> effective May 20 through June 10, 2014[,] then his absences from June 11
> until he returned to work on June 23, 2014 were counted towards his
> renewed FMLA entitlement. *All* of his absences during the interim were
> excused.
>
> On July 9, 2014, subsequent to the Charging Party's return to work from
> the leave of absence, Austal issued the Charging Party both a Written
> Warning and a Final Warning for excessive absences in violation of
> Austal's Attendance Policy. Specifically, the policy allows each employee
> 7.5 attendance-related occurrences within a 12-month rolling period for
> unexcused absences or tardies; an employee normally will be terminated
> upon reaching 8 occurrences. The Charging Party had accrued 9.5
> occurrences. He was advised that further absences or tardiness could
> result in his termination, and acknowledged receipt of the warnings. Again,

none of these occurrences were the result of any days on which he was on the leave of absence in May and June, as those absences were excused.

Unfortunately, the Charging Party thereafter accrued occurrences on November 3, 13, 24, and December 22, 23, 29. On January 27, 2015, he received an additional occurrence, which totaled his occurrences at 15. As a result of the Charging Party's continued and repeated failure to abide by Austal's attendance policy, the Charging Party was terminated effective January 27.

.    .    .

The Charging Party complains that 7.5 of the 15 occurrences which led to his termination were assessed when he was "on approved short term disability leave . . ." and if Austal would have, instead, afforded him a leave of absence as a reasonable accommodation, his occurrences would have been excused.

To be clear, Austal does not offer "short-term disability leave." Rather, eligible employees are offered the option of short-term disability insurance to supplement their income when a qualifying medical condition—as determined by the provider, not by Austal—renders the employee unable to work for some period of time. Those benefits may run concurrent with an employee being on FMLA leave or another approved leave of absence (e.g., a ADAAA reasonable accommodation leave of absence).

Here, Austal is unaware of the Charging Party receiving short-term disability benefits during the relevant timeframe, though Austal is aware he applied for short-term disability benefits in June 2014 while on the leave of absence. Austal, therefore, assumes this June 2014 timeframe is the "short term disability leave" to which he refers in his Charge, and responds accordingly.

.    .    .

[T]he substantive allegations of the Charge are void of any merit. As discussed previously herein, when the Charging Party requested a leave of absence on May 20, 2014 but had no remaining annual FMLA entitlement, Austal accommodated the Charging Party by providing him with a leave of absence from May 20 through June 10, 2014, then counted his absences from June 11, 2014 until his June 23 return to work as FMLA absences. He was not assessed *any* occurrences during the leave. Indeed, *not one* of the 15 occurrences which led to the Charging Party's termination was assessed while he was on the approved leave of absence. Accordingly, Austal provided him with a leave of absence and

excused all of his absences while on leave, and the Charging Party's failure to accommodate claim fails as a matter of law.

(Doc. 6, Exhibit B, at 1, 2-3 & 4 (internal citations and footnote omitted)).[2]

Following its receipt of Austal's position statement, the EEOC requested additional information of Austal by facsimile dated April 29, 2015, including the "names and position titles of all individuals terminated by the Respondent because the employee exceeded the number of occurrences allowed by Austal's attendance policy[]" and which of these terminated individuals had a medical disability/impairment. (Doc. 1, Attachment 3 to Franklin-Thomas declar.) On May 18, 2015, Associate General Counsel for Austal, Kristin Taylor Parsons, responded to the EEOC's request for information by informing the agency that Cooper had settled and released all claims against Austal effective May 7, 2015 and thus his charge of discrimination should be dismissed. (*Id.,* Attachment 4.) On May 19 or 20, 2015, the EEOC asked for a copy of the Cooper settlement, which Parsons attached to an email (*see id.,* Attachments 5 & 6); the Director of the local EEOC office, Erika LaCour, acknowledged receipt of that information by return email in which she also stated: "Please ensure that the Respondent submits answers to the EEOC's Request for Information." (*Id.*, Attachment 5.)

This email comment prompted Parsons to pen a letter to LaCour dated May 22, 2015, which asserted that Austal had not received sufficient explanation of the procedural and substantive relevance of the information sought but pledged to "continue

---

[2]     The undersigned has quoted at some length from Austal's position statement only because the EEOC made significant mention of this document during the course of oral argument on July 25, 2017.

working in a cooperative manner with the EEOC." (*Id.,* Attachment 6, at 1 & 2.) The

EEOC responded to Austal's letter by return letter, dated May 26, 2015, which provides,

in part:

> Your May 22, 2015, response suggests that Respondent believes the
> Commission's investigation is limited to the specific charging party who
> initiated these allegations of discrimination. Please consider yourself on
> notice by this letter that ***the Commission has elected to expand its
> investigation of the above referenced charge to determine if
> Respondent's employment patterns or practices discriminated
> against disabled individuals as a class.*** The decision to expand the
> Commission's investigation is based in part on evidence obtained during
> the investigation regarding the Respondent's attendance policy.

(*Id.,* Attachment 7, at 1 (emphasis supplied)). Parsons thereafter wrote LaCour that

Austal's assessment of whether it deemed a response to the RFI appropriate, in whole

or in part, would be sent to the EEOC by June 17, 2015. (Doc. 6, Exhibit G.) Austal

actually supplied its assessment to the EEOC on June 22, 2015 (*see, e.g.,* Doc. 1,

Attachment 8 to Franklin-Thomas declar.), which consisted of a list of the names and

position titles of all individuals Austal terminated because the employee exceeded the

number of occurrences allowed by its attendance policy, for the period July 1, 2014-

January 31, 2015 (some 89 in number, inclusive of Cooper), as requested in RFI #1.

Austal objected to the remainder of RFI #1, as well as to RFIs 1a & 2 (*see id.* at 2-6). In

her letter accompanying the list and objections, Parsons indicated that "if the EEOC

would be amenable to scheduling a time for us to discuss this matter, I anticipate that

Austal would then be apprised to what it is the EEOC intends to articulate as its specific

RFI requests, and the parties then could hopefully reach some mutually agreeable

production parameters. To that end, I am at the general leisure of the EEOC's

convenience to schedule an in-person meeting, or alternatively, a conference call." (*Id.* at 1.)

On June 26, 2015, the local EEOC office wrote Parsons and requested she provide, with respect to the 89 individuals on the list, "the most current mail address, email address and telephone number" known to Austal by not later than July 10, 2015. (Doc. 1, Attachment 9 to Franklin-Thomas declar.) On July 17, 2015, Parsons informed LaCour by letter that: "As always, Austal intends to continue working cooperatively with the EEOC vis-à-vis its investigative efforts. However, those efforts are subscribed by limitations, including but not limited to relevance considerations. Accordingly, though Austal has previously responded to the EEOC's information requests solely as an act of good faith, Austal declines to respond to any further requests until it is fully apprised of a legitimate explanation as to the *basis for* the expanded investigation and the *relevance of* the EEOC's information requests. Again, I remain available to discuss this matter with the EEOC at its leisure, either by telephone or an in person conference." (Doc. 1, Attachment 10 to Franklin-Thomas declar.) Five days later, on July 22, 2015, the local EEOC office faxed and mailed Parsons a letter serving to confirm that "the Respondent [was] refus[ing] to provide the data requested in the EEOC's June 26, 2015, Request for Information. Please note that if the data is not received on or before July 29, 2015, that a subpoena or an adverse inference letter of determination will be issued." (Doc. 6, Exhibit L.)

Almost five months later, on December 18, 2015, the EEOC District Director in Birmingham, Delner Franklin-Thomas, issued a subpoena to Austal demanding production of certain information to the Mobile EEOC office by January 13, 2016. (*See*

Doc. 6, Exhibit M.) Austal filed a petition to revoke subpoena based, at least in part, on substantive objections to the subpoena. (*Id.,* Exhibit N.) Instead of addressing Austal's substantive objections, the EEOC, by and through Franklin-Thomas, "elected to withdraw the subpoena, thereby rendering the current objections moot. This withdrawal occurs as a result of procedural deficiencies in the requests for information leading to the subpoena request and is without prejudice to the Commission to seek similar information in the future. Therefore, the above referenced Subpoena, Subpoena No. BIDO-15014, should be and the same is hereby withdrawn." (*Id.,* Exhibit O.)

Eight months later, on August 16, 2016, the local EEOC office served Austal with another Request for Information with an August 30, 2016 compliance deadline. (Doc. 1, Attachment 11 to Franklin-Thomas declar.):

> For each Austal employee identified in prior responses as being terminated in accordance with the Respondent's attendance policy, provide all written documentation showing what facility they routinely worked in, and all written comments or communications regarding each request for accommodation they made between July 1, 2014 and January 31, 2015.
>
> 2.      For each Austal employee identified in prior responses as being terminated in accordance with Respondent's attendance policy, provide documents which reflect their
>
> i)      current or most recent mailing address, telephone number, and electronic mail address.
> ii)     details about the accommodation requested; whether the request[] was granted or denied; if an alternate accommodation was proposed; and, if applicable[,] the type of accommodation Respondent offered to the employee.
>
> In the alternative, provide a list summarizing this information.
>
> 3.      Provide a complete copy of each and every personnel file or other file maintained by Respondent or its managers on or about Jimmy A. Cooper. If not included in the file or already submitted to the EEOC, submit copies of any change of status forms, disciplinary actions,

counseling, warnings, reprimands and performance evaluations since this employee's date of hire.

       4.      Provide a complete copy of any and all correspondence between Jimmy Cooper and any Austal employee, including managers and human resources, which discusses, mentions or comments on attendance or leave issues associated with his employment.

(*Id.*) This RFI elicited the following August 30, 2016 response from Austal's counsel:

"[A]s stated in my letter from more than a year ago on July 17, 2015, Austal declines to respond to any further requests until it is fully apprised of a legitimate explanation as to the *basis for* the expanded investigation and the *relevance of* the EEOC's information requests. I have reiterated my availability to discuss this matter with the EEOC *numerous* times, but I have yet to receive any communication from the EEOC in that regard whatsoever. Be that as it may, I *again* underscore that I remain available for a discussion with the EEOC at its convenience, either by telephone or an in-person conference." (Doc. 1, Attachment 12 to Franklin-Thomas declar.) By email dated August 31, 2016, LaCour advised Parsons that her statement that the EEOC had never informed Austal of the basis for the expanded investigation and the relevance of the EEOC's information request was not an accurate statement because the EEOC's May 26, 2015 Letter was responsive to Austal's "query." (Doc. 6, Exhibit R.)

On September 6, 2016, Parsons wrote the local EEOC office in relevant measure as follows:

The EEOC has been completely unwilling to engage Austal at any level, and Austal remains in the dark as to what the "expanded investigation" is all about. For nearly sixteen months now, the EEOC has declined or refused to inform Austal as to why it has elected to expand the investigation—or simply *ignored* Austal's requests in that regard—but yet, continued to insist (albeit interrupted by *lengthy* periods of inactivity) that Austal respond to RFIs. I fail to understand the approach the EEOC is taking and find that approach inconsistent with the remedial purposes of

the EEOC. I also fail to understand why the EEOC would both refuse to enlighten Austal as to the issue at hand as well as let the matter sit dormant for more than a year without resolution.

Setting the foregoing aside, as always, there is a simple way to resolve this matter: if the EEOC will simply explain the basis for the expanded investigation, then Austal can determine the relevance of the EEOC's information requests and respond/object accordingly. It always has been—and remains—that straightforward. However, should the EEOC opt to continue its non-communicative approach on this matter, please be advised that Austal will seek sanctions, including attorneys' fees and costs, if this matter moves to subpoena enforcement or other legal proceedings.

Again, I have offered on four prior occasions to speak with the EEOC about this investigation. I herein make that offer for the *fifth* time but ask that if the EEOC intends to continue with its "expanded investigation" you please direct my correspondence to the EEOC's legal counsel.

(Doc. 1, Attachment 14 to Franklin-Thomas declar.) That same day, September

6, 2016, local EEOC Director LaCour wrote this in response to Austal: "[T]he

Respondent is hereby requested to provide this office with answers to the

request for information by September 13, 2016. If we do not receive the

response, the Commission may subpoena the information . . . ." (*Id.,* Attachment

15.)

On September 28, 2016, the District Director of the EEOC, Delner

Franklin-Thomas, issued a subpoena addressed to Austal demanding that the

following information be produced to the Mobile EEOC office on October 12,

2016:

1.      For each Austal employee identified in prior responses as being terminated in accordance with Respondent's attendance policy, provide all written documentation showing what facility they routinely worked in, and all written comments or communications regarding each request for accommodation they made between July 1, 2014 and January 31, 2015.

2.    For each Austal employee identified in prior responses as being terminated in accordance with Respondent's attendance policy, provide documents which reflect their

i)     current or most recent mailing address, telephone number, and electronic mail address.
ii)    details about the accommodation requested; whether the request[] was granted or denied; if an alternate accommodation was proposed; and, if applicable[,] the type of accommodation Respondent offered to the employee.

In the alternative, provide a list summarizing this Information.

(*Id.*, Attachment 16.) [3] Austal filed a Petition to Revoke Subpoena and asserted a substantive general objection to it, namely, that the EEOC did not have the authority to subpoena the information because the information is not reasonably relevant to the charge under investigation.  (*See id.,* Attachment 18, at 4-8.)

On February 16, 2017, Bernadette B. Wilson, Acting Executive Officer Executive Secretariat of the EEOC, issued a Determination denying Austal's Petition to Revoke Subpoena No. MOBI-16-002 and ordered Austal to produce information responsive to the subpoena within twenty (20) days of its receipt of the final determination. (Doc. 1, Attachment 19 to Franklin-Thomas declar., at 15). With respect to relevance, the determination reads as follows:

> Moreover, *the documents sought by the subpoena at issue are clearly relevant to whether Petitioner discriminates against individuals because of their medical conditions or disabilities. The subpoena seeks specific information about 89 employees identified by Austal USA who were terminated under the same attendance policy used to terminate Charging Party. The Commission seeks not only the contact information for those 89 individuals, but also documents and details related to whether or not the employee had a*

---

[3]    This is the same information requested by LaCour in her letter to Parsons dated August 16, 2016, save that LaCour's earlier letter also requested additional information related solely to Cooper not duplicated in the subpoena. (*Compare id. with id.,* Attachment 11.)

*medical condition, disability or requested an accommodation. These requests are tailored to obtain evidence to determine whether Petitioner has a policy or practice of failing to reasonably accommodate employees, including Charging Party, because of their disability or medical condition.*

(*Id.* at 10 (emphasis supplied)).

On May 23, 2017, the EEOC filed the instant application for an order to show cause why an administrative subpoena should not be enforced. (Doc. 1.) In its brief in support of the application, the EEOC contends that: (1) Austal has no valid defense for failing to comply with the subpoena (Doc. 2, at 4-6) because the subpoena is valid and within the agency's authority (*id.* at 6); all procedural prerequisites have been fulfilled (*id.* at 6-9); and the information sought is relevant (*id.* at 9-16); and (2) the subpoena is for legitimate purposes, not too indefinite, and compliance does not impose an undue burden on the Respondent (*id.* at 16-17). Given that Austal's "key" argument in support of its motion to quash subpoena (*see* Doc. 6) is that the EEOC has not shown that the requested information is relevant to the charge under investigation (*see id.* at 11-15), the EEOC's brief directed to relevancy is set forth hereinafter.

*It is undeniable that the requested information "might cast light on the allegations against the employer." The Charging Party alleges that Respondent terminated his employment based on an attendance policy which did not provide for accommodation of his medical condition or disability. The EEOC seeks documents relating to the 89 other individuals identified by Respondent as having been terminated under the same policy. Such information will tend to prove or disprove the Charging Party's charge, will clarify how Respondent applies its attendance policy under investigation, or will otherwise further the goals of the investigation. The requests are tailored to obtain evidence to determine whether Respondent has a policy or practice of failing to reasonably accommodate employees, including Charging Party, because of their disability or medical condition. The requests are further narrowed to obtain evidence about 89 former employees Austal indicated it terminated under this policy, including their positions, contact information and details*

*concerning any request for accommodations they made within a very discrete time period, between July 1, 2014 and January 31, 2015. This information will permit the EEOC to determine whether the Respondent has unlawfully terminated Charging Party and other employees for medical conditions and/or disabilities under the ADA.*

.   .   .

In [the] EEOC's investigation of the Charging Party's allegation of disability discrimination, Respondent identified 89 other individuals terminated under the same attendance policy. The Commission simply seeks information related to those individuals, including whether or not the employee had a medical condition, disability or requested an accommodation. Thus, the issues on which [the] EEOC seeks documents reasonably arose during the course of the EEOC's investigation of the charge against the Respondent, and the subpoena must be enforced. The requests are tailored to obtain evidence to determine whether Respondent has a policy or practice of failing to reasonably accommodate employees, including Charging Party, because of their disability or medical condition in violation of the ADA, due to its attendance policy, or its application of that policy.

(Doc. 2, at 10 & 14-15 (emphasis supplied)).[4]

## CONCLUSIONS OF LAW

A.   __The EEOC's Investigative Subpoena Power__.  The Supreme Court

recently examined one of the primary investigative tools the EEOC has at its disposal: a

subpoena. *McLane Co., Inc. v. EEOC,* ___ U.S. ___, 137 S.Ct. 1159, 197 L.Ed.2d 500

(2017).[5]

---

[4]      The EEOC's brief to this Court is substantially similar to the February 16, 2017 Determination issued by Bernadette Wilson. (*Compare id. with* Doc. 1, Attachment 19 to Franklin-Thomas declar.) Interestingly, and for the first time, the EEOC, during oral arguments before the Court on July 25, 2017, started referring to Austal's attendance policy as a no-fault attendance policy that may violate the ADA by assigning chargeable absences in lieu of making reasonable accommodations, even though Cooper's charge of discrimination nowhere alleges that Austal's attendance policy is a no-fault attendance policy and the EEOC at no time in its final written determination and its written submission to this Court ever contended that Austal's attendance policy amounts to a no-fault attendance policy.

[5]      As recognized by the Supreme Court, "Congress has directed the EEOC to exercise the same enforcement powers, remedies, and procedures that are set forth in Title VII (Continued)

In order "[t]o enable the [EEOC] to make informed decisions at each stage of the enforcement process," Title VII "confers a broad right of access to relevant evidence." [*University of Pennsylvania v. EEOC,* 493 U.S. 182,] 191, 110 S.Ct. 577[, 107 L.Ed.2d 571 (1990)]. It provides that the EEOC "shall . . . have access to, for the purposes of examination, . . . any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by" Title VII and "is relevant to the charge under investigation." 42 U.S.C. § 2000e-8(a). And the statute enables the EEOC to obtain that evidence by "authoriz[ing] [it] to issue a subpoena and to seek an order enforcing [the subpoena]." *University of Pa.,* 493 U.S., at 191, 110 S.Ct. 577; see § 2000e-9. Under that authority, the EEOC may issue "subp[o]enas requiring the attendance and testimony of witnesses or the production of any evidence." 29 U.S.C. § 161(1). An employer may petition the EEOC to revoke the subpoena, *see ibid.*, but if the EEOC rejects the petition and the employer still "refuse[s] to obey [the] subp[o]ena," the EEOC may ask a district court to issue and order enforcing it, see § 161(2).

*Id.* at ___, 137 S.Ct. at 1164-65 (footnote omitted). This is the exact path that the instant action has taken to reach this Court: the EEOC issued subpoena MOB1-16-002 to Austal (Doc. 1, Attachment 16 to Franklin-Thomas declar.); Austal filed a Petition to Revoke Subpoena (*see id.,* Attachment 18); the EEOC rejected Austal's Petition and ordered it to produce the requested information within 20 days of receipt of the EEOC's final determination (*id.,* Attachment 19); and when Austal did not produce the material sought by subpoena, the EEOC filed the present application seeking an order from this Court enforcing the subpoena (*see* Doc. 1).

      **B.**    **Pertinent Legal Framework.**  The role of this Court in this proceeding to enforce an administrative subpoena is limited. *EEOC v. Tire Kingdom, Inc.,* 80 F.3d 449, 450 (11th Cir. 1996); *United States v. Florida Azalea Specialists,* 19 F.3d 620, 623

---

of the Civil Rights Act of 1964 when it is enforcing the ADA's prohibitions against employment discrimination on the basis of disability." *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 285, 122 S.Ct. 754, 759, 151 L.Ed.2d 755 (2002) (citation omitted).

(11th Cir. 1994). Indeed, this Court "is not to use an enforcement proceeding as an opportunity to test the strength of the underlying complaint." *McLane, supra,* 137 S.Ct. at 1165. Instead, it is well settled that this Court may only inquire into "(1) whether the administrative investigation is within the agency's authority, (2) whether the agency's demand is too indefinite, and (3) whether the information sought is reasonably relevant." *Tire Kingdom, supra,* 80 F.3d at 450 (citations omitted); *see also Federal Election Comm'n v. Florida for Kennedy Committee,* 681 F.2d 1281, 1284 (11th Cir. 1982) ("As a general rule, an administrative subpoena should be enforced 'if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.'" (quoting *United States v. Morton Salt Co.,* 338 U.S. 632, 652, 70 S.Ct. 357, 369, 94 L.Ed. 401 (1950)). And while the "burden of proving each of these three elements lies" with the EEOC, *EEOC v. Homenurse, Inc.,* 2013 WL 5779046, *8 (N.D. Ga. Sept. 30, 2013), the only element at issue in this proceeding, and which will be the focus of all further analysis, is whether the information sought from Austal is "'relevant to the charge under investigation.'" *EEOC v. Shell Oil Co.,* 466 U.S. 54, 64, 104 S.Ct. 1621, 1629, 80 L.Ed.2d 41 (1984), quoting 42 U.S.C. § 2000e-8(a).

> That limitation on the Commission's investigative authority is not especially constraining. Since the enactment of Title VII, courts have generously construed the term "relevant" and have afforded the Commission access to virtually any material that might cast light on the allegations against the employer. In 1972, Congress undoubtedly was aware of the manner in which the courts were construing the concept of "relevance" and implicitly endorsed it by leaving intact the statutory definition of the Commissioner's investigative authority. On the other hand, Congress did not eliminate the relevance requirement, and we must be careful not to construe the regulation adopted by the EEOC governing what goes into a charge in a fashion that renders that requirement a nullity.

*Id.* at 68-69, 104 S.Ct. at 1631 (footnotes omitted). The Supreme Court explained in *McLane Co., Inc.,* that "[t]he decision whether evidence sought is relevant requires the district court to evaluate the relationship between the particular materials sought and the particular matter under investigation—an analysis 'variable in relation to the natural purposes and scope of the inquiry.'" 137 S.Ct. at 1167-68, quoting *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 209, 66 S.Ct. 494, 90 L.Ed. 614 (1946). Of course, the big "takeaway" from *McLane* is the explicit holding that "a district court's decision to enforce [or quash] an EEOC subpoena should be reviewed for abuse of discretion," 137 S.Ct. at 1170, the Court specifically noting, as is pertinent here, that the relevancy inquiry is "'generally not amenable to broad *per se* rules[,]'" and, instead, involves "'fact-intensive, close calls' better suited to resolution by the district court rather than the court of appeals." 137 S.Ct. at 1168 (citations omitted); *see also id.* at 1167 (observing that "basic principles of institutional capacity counsel in favor of deferential review[,]" when a factfinder's decision "turns not on 'a neat set of legal rules[,]' but instead on the application of broad standards" to the specific and nuanced facts of a particular case). Accordingly, the undersigned's analysis, to follow, will focus on whether the EEOC has satisfied its burden of establishing that the information it seeks by subpoena is relevant to the charge of discrimination under investigation.

      **C.**    <u>**Analysis.**</u>  The only charge of discrimination identified in this case is Jimmy A. Cooper's March 5, 2015 filing where Cooper admits that Austal terminated him on January 27, 2015 for violating its attendance policy but also alleges he was terminated because of his disability instead of being provided leave—under the attendance policy—as an accommodation. (*See* Doc. 1, Attachment 1 to Franklin-

Thomas declar. ("While on approved short term disability leave, I accrued seven and a half occurrences which put me over the maximum allowed. The Respondent failed to provide leave as an accommodation.")). Austal, at all times since providing the EEOC with its list of 89 employees—88 employees other than Cooper—terminated under its attendance policy (during the identified period), has refused to provide any additionally requested information about the other 88 individually-identified employees until informed of the relevance of such information to Cooper's charge of discrimination.[6] The EEOC offered nothing with respect to relevance until the Determination denying Austal's Petition to Revoke Subpoena: "[T]he documents sought by the subpoena at issue are clearly relevant to whether Petitioner discriminated against individuals because of their medical conditions or disabilities. The subpoena seeks specific information about 89 employees[7] identified by Austal USA who were terminated under the same attendance policy used to terminate Charging Party. The Commission seeks not only the contact information for those 89 individuals, but also documents and details related to whether or not the employee had a medical condition, disability or requested an accommodation. These requests are tailored to obtain evidence to determine whether Petitioner has a policy or practice of failing to reasonably accommodate employees, including Charging

---

[6] The undersigned need make clear that at no time has the EEOC anywhere suggested that the specific information requested by subpoena (*see* Doc. 1, Attachment 16 to Franklin-Thomas declar.) would provide them additional evidence about Cooper (the "89th" employee identified) that the agency does not already know or otherwise have in its possession. (*See* Doc. 2, at 14 ("In [the] EEOC's investigation of the Charging Party's allegation of disability discrimination, Respondent identified 89 *other individuals* terminated under the same attendance policy. The Commission simply seeks information related to *those individuals* . . . ." (emphasis supplied)). Indeed, it is apparent from the agency's representations that it has all "pedigree" information on Cooper and is fully aware of the accommodation Cooper claims he was denied by Austal, etc.

[7] Again, the correct number is 88, as Cooper is on the list of 89.

17

Party, because of their disability or medical condition." (Doc. 1, Attachment 19 to Franklin-Thomas declar., at 10 (footnote added)).

The EEOC expounded on this statement of relevancy in its brief filed in this Court: "It is undeniable that the requested information 'might cast light on the allegations against the employer.' The Charging Party alleges that the Respondent terminated his employment based on an attendance policy which did not provide for accommodation of his medical condition or disability. The EEOC seeks documents relating to the 89 *other individuals* identified by Respondent as having been terminated under the same policy. Such information will tend to prove or disprove the Charging Party's charge, will clarify how Respondent applies its attendance policy under investigation, or will otherwise further the goals of the investigation. . . . This information will permit the EEOC to determine whether the Respondent has unlawfully terminated Charging Party and other employees for medical conditions and/or disabilities under the ADA." (Doc. 2, at 10 (emphasis supplied)). And as a final point on relevancy, but for the first time since expanding its investigation, counsel for the EEOC referred to Austal's attendance policy as a no-fault attendance policy that the agency believes may violate the ADA at the July 25, 2017 show cause hearing.

The EEOC's no-fault attendance policy argument to this Court on July 25, 2017 comes too late, *see EEOC v. Burlington Northern Santa Fe Railroad,* 669 F.3d 1154, 1157 (10th Cir. 2012) ("The EEOC should not wait until it applies to the district court to supply justification or evidence that should have been provided during the administrative enforcement phase, and the EEOC has not explained how or why the district court was required to credit its summaries of other charges filed against BNSF." (footnote

omitted)), and asks the Court to "bridge the gap" between Cooper's individual charge of discrimination and the agency's pattern or practice investigation.[8] The Court declines to do so. After all, Cooper's charge does not allege that Austal's attendance policy amounts to a no-fault policy which per force discriminates against those employees, like him, with disabilities by failing to make reasonable accommodations for them. And because nothing about the allegations in the charge of discrimination suggests that Cooper was concerned about the impact of Austal's attendance policy as a no-fault policy, the EEOC simply cannot use this "fresh" argument to connect the information requested from Austal by subpoena to Cooper's charge of discrimination.

The most important arguable "relevance" statement in writing,[9] of course, is that attributable to the administrative decision denying Austal's Petition to Revoke Subpoena. The administrative decision suggests the requested information is relevant to whether Austal discriminated against its employees, including Cooper, because of their medical conditions or disabilities (that is, whether the company pursued a policy of failing to reasonably accommodate its employees because of their disabilities or medical conditions) by seeking specific information—about the 89 individuals (again, really 88) previously identified by Austal as having been terminated under the same attendance policy used to terminate Cooper. In its brief before this Court, the EEOC

---

[8] That this is an impossible burden for this Court to shoulder is apparent given Austal's staunch insistence (during the show cause hearing) that its attendance policy is not a no-fault attendance policy, as reflected in its employee handbook (evidence of which is not before this Court).

[9] In the undersigned's opinion, there is not even an arguable "relevance" statement contained in the expansion letter dated May 26, 2015. (*See* Doc. 1, Attachment 7 to Franklin-Thomas declar.)

attempts to seize upon this statement of relevance by arguing that the requested information (1) "'might cast light on the allegations against the employer[]'" and (2) "will tend to prove or disprove the Charging Party's charge, will clarify how Respondent applies its attendance policy under investigation, or will otherwise further the goals of the investigation." (Doc. 2, at 10.) The latter statements (which merely expound on the former statement) are aspirational, however, and make no suggestion regarding how the requested information will prove Cooper's specific charge, clarify how Austal applies its attendance policy, or otherwise advance its investigation, *see TriCore, supra,* 849 F.3d at 937 ("To show subpoenaed information is relevant, the EEOC must show it has a 'realistic expectation rather than an idle hope that the information requested will advance its investigation.'" (quoting *EEOC v. Konica Minolta Business Solutions USA, Inc.,* 639 F.3d 366, 369 (7th Cir. 2011)). The root of this problem, of course, becomes apparent when one understands that the information requested by the EEOC extends beyond those employees with a medical condition or disability terminated under the attendance policy without being offered a leave of absence as a reasonable accommodation (consistent with the individual charge made by Cooper), to capture all employees terminated under the attendance policy, regardless of whether those employees had a disability or medical condition and no matter the nature of any accommodation requested. Accordingly, the undersigned can reach no other conclusion but that what the EEOC improperly seeks by subpoena in this case is the discovery of members of a potential class of employees who suffered from a pattern or practice of discrimination, consistent with what is stated in the agency's expansion letter dated May 26, 2015 (*see* Doc. 1, Attachment 7 to Franklin-Thomas declar.), rather than information

which fleshes out Cooper's charge.[10] *See EEOC v. Royal Caribbean Cruises, Ltd.,* 771

F.3d 757, 761 (11th Cir. 2014) ("The relevance that is necessary to support a subpoena

for the investigation of an individual charge is relevance to the contested issues that

must be decided to resolve that charge, not relevance to issues that may be contested

when and if future charges are brought by others.").[11] Indeed, if, as is apparent in this

case, the EEOC desires to conduct a broader pattern-or-practice investigation, it is

empowered to file a Commissioner's charge. What it cannot do is use Cooper's charge

as a backdoor means to obtain information that is more appropriately available through

other administrative vehicles. *See id.* at 762 ("The Commission has the ability to file a

Commissioner's charge alleging a pattern and practice of discrimination that could

support a request for [] information [so that it may advocate on behalf of other potential

victims of employment discrimination]. . . . [T]he EEOC may not enforce a subpoena in

the investigation of an individual charge merely as an expedient bypass of the

---

[10]     In other words, the EEOC in this instance is improperly "fishing" for evidence of
pattern or practice discrimination rather than fleshing out Cooper's individual charge of disability
discrimination. *Cf. EEOC v. Royal Caribbean Cruises, Ltd.,* 2013 WL 12133963, *2 (S.D. Fla.
Jun. 7, 2013) ("The individual charge of discrimination does not allege a company-wide pattern
and practice of discrimination under the ADA. Such a charge has not been brought. As such,
the request amounts to an unauthorized fishing expedition."), *aff'd,* 771 F.3d 757 (11th Cir.
2014).

[11]     The only contested issue presented by Cooper's individual charge of
discrimination is that he was not granted a reasonable accommodation of his disability in the
form of a leave of absence under Austal's attendance policy and it is not at all clear to the
undersigned how information about the 88 other people who were terminated under Austal's
attendance policy from July 1, 2014 through January 31, 2015 is relevant to resolving the
contested issue identified in Cooper's charge. The lack of clarity is attributable to the EEOC's
failure to connect the requested information to Cooper's charge of discrimination, a task made
impossible by the agency's failure to limit its request to additional employees on the "list of 89"
terminated in accordance with Austal's attendance policy who have a qualifying disability or
medical condition and requested a leave of absence as an accommodation. In other words, the
information sought by subpoena in this case simply does not provide context for determining
whether Cooper was discriminated against because of his disability.

mechanisms required to file a Commissioner's charge."). And the EEOC's expansion letter dated May 26, 2015 simply offers it no assistance, *see EEOC v. Southeast Food Services Co., LLC,* 2017 WL 2728422, *4 (E.D. Tenn. Jun. 23, 2017) (citing *Royal Caribbean* in support of the proposition that "[t]he EEOC may not . . . subpoena information unrelated to the charge at hand by simply announcing that it has broadened the scope of its investigation."), because that letter is not a charge of discrimination, "which is required for the EEOC to seek information about alleged discrimination under § 2000e-8[,]" *TriCore, supra,* 849 F.3d at 939, and does not statutorily expand its investigative power, *EEOC v. Southeast Food Services Co., LLC,* 2017 WL 1155040, *3 (E.D. Tenn. Mar. 27, 2017) ("[T]he Commission's decision to expand its investigation after it learned of Respondent's promotion policy does not provide any further justification for the subpoenaed information. The Commission's decision to expand its investigation does not statutorily expand its investigative power. The Commission's subpoena power remains limited to information that is 'relevant to the *charge under investigation*.' 42 U.S.C. § 2000e-8(a) (emphasis added). The letter does not change the nature of the instant charge[.]"), *report and recommendation adopted,* 2017 WL 2728422 (E.D. Tenn. Jun. 23, 2017), such that this Court must reject the notion that because Austal's alleged individual act of discrimination against Cooper "might" be part of a pattern or practice of discrimination, the EEOC is entitled to the information requested by subpoena. This type of rationale would impermissibly render the relevance requirement a nullity. *Compare Burlington, supra,* 669 F.3d at 1157-58 ("Any act of discrimination *could* be part of a pattern or practice of discrimination, but not every charge of discrimination warrants a pattern or practice investigation. As the Supreme

Court explained in *Shell Oil Co.,* we should not construe relevance so broadly as to render its requirement a nullity.") *with Tricore, supra,* 849 F.3d at 939 (finding that "deliberation and consultation about a particular employee hardly points to a pattern or practice and therefore is not enough to 'transcend the gap' between an individual charge of discrimination and a pattern or practice investigation.").[12] Stated somewhat differently, "information sought by the EEOC through a subpoena must still be relevant to the underlying charge, even if the EEOC decides to broaden its inquiry[,]" *Southeast Food Services Co., LLC, supra,* 2017 WL 2728422, at *4, and because the EEOC has failed to establish that the information/evidence sought by subpoena is relevant to Cooper's individual charge of disability discrimination, *see McLane, supra,* 137 S.Ct. at 1167, it is recommended that the EEOC's request to enforce subpoena be denied.

## CONCLUSION

In light of the foregoing, the undersigned **RECOMMENDS** that this Court find that the EEOC has not met its burden of demonstrating that the information subpoenaed is relevant to Cooper's charge. Given the EEOC's inability to consistently focus its argument on how the requested information would resolve Cooper's individual charge of discrimination or is necessary to determine whether Austal discriminated against Cooper, granting the application would render the relevancy requirement a nullity. Accordingly, the Court should **DENY** the EEOC's application to enforce administrative subpoena (*see* Doc. 1) and **GRANT** Austal's motion to quash subpoena (Doc. 6).

---

[12]     The undersigned cannot agree with the EEOC's argument that this Court should eschew any reliance upon the holdings in *Royal Caribbean* and *Burlington* on the basis that the subpoenas in those cases sought company-wide or nationwide information, because, just as in *Tricore,* the subpoena request in this case "rests on no firmer foundation to justify the EEOC's expanded investigation." 849 F.3d at 940.

Austal's motion for an award of attorneys' fees, included in its motion to quash subpoena (*see* Doc. 6, at 1 & 18), should be **DENIED**.[13]

<u>**NOTICE OF RIGHT TO FILE OBJECTIONS**</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's

---

[13]     Austal's request for an award of attorneys' fees lacks adequate statutory or other legal support; therefore, its request for attorneys' fees is properly **DENIED**. *Compare, e.g., Isotec Int'l, Inc. v. Stankiewicz Int'l Corp.,* 2006 WL 1553829, *1 (N.D. Ga. May 30, 2006) ("Plaintiff has cited no legal avenue or authority under which this court could or should grant attorney's fees. Further, its request should be filed as a motion. . . . As Plaintiff has neither filed a motion for attorney's fees nor provided authority supporting the motion, the court will not grant Plaintiff's attorney's fees for filing an answer to Defendant's motion."*), with, e.g., Gadsby v. American Golf Corp. of California,* 2014 WL 5473555, *4 (M.D. Fla. Oct. 28, 2014) ("Rule 54, Federal Rules of Civil Procedure, requires that requests for attorneys' fees be made by motion, which must specify the judgment and the statute, rule or other grounds entitling the movant to recover fees.").

report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

      **DONE** this the 18th day of August, 2017.

                        s/P. BRADLEY MURRAY
                        **UNITED STATES MAGISTRATE JUDGE**